# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

OTIS CORTEZ TAYLOR                                         PLAINTIFF

VS.                                   CIVIL ACTION NO. 3:16CV866-LRA

JAMES HOLLINS AND WARDEN BRIAN LADNER               DEFENDANTS

## OPINION AND ORDER

Defendants James Hollins and Warden Brian Ladner filed a Motion for Summary Judgment for Failure to Exhaust Available Administrative Remedies [ARP] [37], contending that Plaintiff Otis Cortez Taylor never filed an ARP regarding his alleged attack by other inmates. They request that his Complaint be dismissed in this case due to his failure to exhaust the ARP. They attach an Affidavit by Le Tresia Stewart, Investigator II for the ARP at Central Mississippi Correctional Facility [CMCF], stating that Taylor has not filed a grievance with the ARP which alleged that he was physically assaulted by three inmates while housed at the[37-1]. Taylor filed a response [40] and attached an Inmate Request Form dated June 5, 2016, labeled "Exhibit A" [42-1].

A hearing was conducted on July 25, 2017, under the authority of *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), and Plaintiff submitted his Witness List and Exhibit List [51 & 52] , along with what he labeled Exhibits A, B (2 pages), C, and E regarding his ARP [53, 54, 55, & 56]. These Exhibits were submitted at the hearing but were inadvertently not filed as exhibits at that time.

At the Court's direction, Defendants filed a Reply or Rebuttal Memorandum in support of its motion [57] and included an additional Affidavit by Le Tresia Stewart, dated February 22, 2018 [57-1, pp. 1-3] and additional ARP records concerning Taylor [57-1, pp. 4-23].

After a thorough review of the pleadings and exhibits, Taylor's sworn testimony, and the applicable law, the undersigned recommends that Defendants' motion be granted in part based upon Taylor's non-exhaustion.

Failure to exhaust is an affirmative defense, so these Defendants have the burden of demonstrating that Taylor failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007). At the summary judgment stage, this means that Defendants "must establish beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment in their favor." *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Tex. St. Board of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). The burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).

Taylor was a convicted felon housed in the custody of the MDOC at the Central Mississippi Correctional Facility [CMCF] in Pearl, Mississippi, on or about December 9, 2015. On that date, Taylor contends that he was assaulted by other inmates, and the responding officer did not help him. He was eventually charged with assault on his

assailants and convicted of this RVR and punished. His Complaint is quoted verbatim as follows:

> **STATEMENT OF CLAIM**
> On December 9, 2015 I was assaulted by 3 inmates at CMCF 720-A-2 C-Zone. Officer Hollins was the first responder on the scene and witnessed me protecting myself with my back to the front door. Seeing Officer Hollins, my assailants back away from me and the door. Officer Hollins did not say anything or did he try to pull me off of the zone. Officer Hollins distracted me thinking he was another attacker causing me to take my eyes off my assailants. One assailant hit me with a mop stick, splitting my head to the skull.
>
> **RELIEF**
> The relief I seek is to rectify the wrongdoings of the officer forging my name on a rule violation report of me being charged with assault as well as Warden Latner being held accountable for allowing those falsified documents hold merit. The assault stricken from file, compensation for pain and suffering.

Complaint [1], p. 4.

By Order [8] filed December 15, 2016, Plaintiff was directed by the Court to more fully explain his claims. He did so in his response [9] filed on December 30, 2016. In his response, he contends that Officer Hollins failed to protect him; falsified information of a RVR charging him with assault on his three assailants; forged his name on the RVR and gave him no chance to call witnesses; caused him mental, emotional, and physical discomfort as a "result of deliberate indifference." [9, p. 1]. As to Warden Ladner, Plaintiff charged him with use of his authority to obstruct and influence appeal and remedy process; failure to correct falsified documents due to administrative errors on

3

RVR; obstruction of second step of the prison's remedy program; and, authorizing movement to EMCF as punishment for seeking relief from the Courts. [9, pp. 1-2]. He also contended that his punishment from the RVR was 30 days without visitation, commissary and telephone privileges; custody changed from medium to close custody; and, assault charge remains on his institutional file for ten years. He charges that his appeal was denied through the ARP by Warden Ladner, and the second step was filed in March 2016 and never put in his file. *Id.* He contends that Officer Hollins could have prevented the assault by pulling him from the zone. Hollins failed to protect Taylor from harm as a result of his malicious indifference. *Id.*

Taylor was allowed to file his Amended Complaint [23-1] by Order entered April 3, 2017 [32]. In this amended complaint, Taylor charges that the tower officer, Officer Burkes, opened the door so he could be pulled to safety. Taylor further augmented his claims at the *Spears* hearing. He testified the second officer on the scene, Officer Tucker, opened the door and grabbed Plaintiff out and got him medical attention. Taylor was taken to University Medical Center on the same day and received stitches to his head and pain medication.

As Defendants point out, the applicable section of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

This statute clearly requires an inmate bringing a civil rights action in this Court to first exhaust his available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Exhaustion is no longer left to the discretion of the district court, but is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Exhaustion will not be excused when an inmate fails to timely exhaust his administrative remedies; the exhaustion requirement also means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This is so regardless of whether the inmate's ultimate goal is a remedy not offered by the administrative process, such as money damages. *Id.*

In *Jones v. Bock*, 549 U.S. 199, 211 (2007), the Supreme Court confirmed that exhaustion was mandatory under the PLRA and that "unexhausted claims cannot be brought in court." Citing *Jones*, the Fifth Circuit restated that "the PLRA pre-filing exhaustion requirement is mandatory and non-discretionary," and that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal,* 702 F.3d 785, 787-88 (5th Cir. 2012) (per curiam); *Moussazadeh v. Texas Dept. of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012) (quoting *Gonzalez*).

The January 17, 2017, affidavit by Le Tresia Stewart only states that Taylor had not filed a grievance through the ARP alleging that he was physically assaulted by three inmates while housed at CMCF [37-1]. After being directed to respond to Taylor's exhibits, Defendants submitted another affidavit by Le Tresia Stewart dated February 22,

5

2018. In this affidavit, she explains that inmates are only allowed to raise one issue or "incident" per ARP grievance. RVR appeals and requests for relief related to other matters must be filed as separate grievances. According to Ms. Stewart, Taylor did file ARP grievance CMCF-16-133 challenging his conviction of RVR #01494198 [57-1]. It primarily addressed the RVR for assault assessed against Taylor, so it was treated as an RVR appeal. It was subject to the one-step ARP process reserved only for RVR appeals rather than the standard two-step process used for all non-RVR appeal grievances.

The grievance filed as CMCF-16-133 is a challenge against the RVR Taylor received after the incident wherein he was assaulted by the other inmates. The grievance does not mention either Defendant in this case by name, and it focuses on Plaintiff's RVR and his punishment. In the last sentence, Taylor stated:

> Also, I want to exhaust all steps of the ARP process to file serious and lawful complaints to the district courts for assaultive actions against me, causing serious injuries, negligence, misconduct by an officer, and abuse of authority by a staff member.

[57-1, p. 5].

Ms. Stewart further states in this affidavit that the undated letter by Taylor [57-1, pp. 22-23] was discovered after the Court's order directing a response. According to her, the letter was placed in file CMCF-16-133 incorrectly without being seen or addressed by Ms. Stewart. It was not date stamped to show the facility where it was received or

scanned into the electronic system. Had it been processed correctly, Taylor would have been sent a letter stating that there is no second step to an RVR appeal and that if he had additional grievances related to the alleged assault, these must be submitted separately as a new ARP. She points out that the letter does not identify any officers by name or make any allegations regarding a failure to protect him. Had the letter been treated as a new ARP when submitted, it would have been rejected as untimely, because it would have been filed more than 30 days after the alleged incident.

Ms. Stewart concludes that Taylor did not submit any additional grievance seeking relief against prison officials due to an alleged assault on him by inmates in December 2015.

The Administrative Remedy Program has been implemented by the MDOC statewide in all prisons, including MSP, under the authority of Miss. Code Ann. § 47-5-801. The Court initially approved the MDOC ARP in *Gates v. Collier,* GC 71-6-S-D (N.D. Miss. 1971) (Order entered Feb. 15, 1994). The current two-step process is described in the Inmate Handbook and utilizes the Administrative Remedy Program and the Inmate Legal Assistance Program. Inmates may request information or assistance in using the program from their Case Manager or from any staff member in their housing unit. (See MDOC Inmate Handbook, ch. VIII, available at http://www.mdoc.ms.gov).

The exhaustion requirement demands *proper* exhaustion, finished before filing the federal lawsuit. According to the MDOC ARP, this means the initial grievance must be filed within 30 days of the incident. In *Woodford*, the Supreme Court found that the

7

PLRA's exhaustion requirement means "proper" exhaustion, which requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules, *including deadlines*, as a precondition to bringing suit in federal court." *Woodford*, at 83-84. *See also Gordon v. Yusuff,* No. 03-60822, 2004 WL 1551625, at *1 (5th Cir. 2004) (a federal prisoner's untimely appeal to Central Office constituted grounds for dismissal based upon non-exhaustion). It is the prison's requirements, not the PLRA, that define the requirements of exhaustion. *Jones v. Bock,* 549 U.S at 218.

To defeat a summary judgment motion, competent evidence must be provided to defeat that set forth by the movants. Although Taylor insists that he exhausted, his ARP file does not contain the "failure to protect" claim against Defendant Officer Hollins. His main concern is that the officials charged *him* with assault and that he was convicted and punished for the RVR. He charges that the RVR process, including the appeal, was constitutionally inadequate. In his ARP, [57-1, p. 5], Taylor never states that Officer Hollins failed to protect him from the violent assault. Instead he states that he was charged with fighting but never served; that his name was forged; and, that he was not allowed to call witnesses. He ends it with asking for the RVR to be stricken from his files and having all of his privileges restored. He did conclude by stating that he wanted "to exhaust all steps of the ARP process to file serious and lawful complaints to the district courts for assaultive actions again [him] causing serious injuries, negligence, misconduct by an officer, and abuse of authority by a staff member." Taylor's intent may have been to exhaust but he never contended that either Officer Hollins or Warden Ladner failed to

protect him from the three inmate assailants— he only complains about the RVR conviction. This grievance was considered an appeal of his ARP, and his first step response was given by Defendant Warden Ladner and dated February 9, 2016. His conclusion was:

> Upon review of all documentation regarding RVR #01494198 it was determined that both offenders involved in the altercation admitted to fighting. Therefore, the RVR will remain on file as heard by the Disciplinary Hearing Officer.

[57-1, p. 20].

There was no second-step appeal for an RVR appeal. Taylor filed essentially the same ARP in October 2016, but it was rejected as being the same as the one filed earlier [54, pp. 2-3]. The law requires that the prison officials be provided fair notice of a prisoner's specific complaints and with the "time and opportunity to address [the] complaints internally." *Johnson v. Johnson,* 385 F.3d 503, 516 (5th Cir. 2004). Although Taylor clearly exhausted his complaints regarding the RVR he received after being assaulted by the other inmates, the issue of whether these Defendants failed to protect him was not set forth or considered during the ARP process. Although Taylor generally contends he exhausted, a plaintiff's 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence' will not satisfy the nonmoving party's burden on summary judgment." *Garner v. Moore,* 536 Fed. Appx. 446, 449 (5th Cir. 2013) (quoting *Freeman v. Tex. Dep't of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004). In this case, Defendants' "uncontested, competent summary judgment evidence establishes beyond peradventure" that the ARP was available to Taylor and that he failed to complete it

9

regarding all of the specific claims set forth in the Complaint before filing it. *See Fruge v. Cox,* Civil Action No. 14-0153, 2015 WL 964560 at *4 (W.D. La., March 4, 2015).

Each Defendant does not necessarily have to be specifically named. As the Fifth Circuit has stated, "Nothing in the PLRA requires prisoners to identify all defendants that they later sue." *Patterson v. Stanley*, 547 F. App'x 510, 511-12 (5th Cir. 2013) (citing *Jones*, 549 U.S. at 217). The exhaustion requirement's primary purpose "is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and a complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). It follows, therefore, that "a grievance can sufficiently identify a person even if it does not provide an actual name; functional descriptions and the like – e.g., a reference to 'the guards in the shower room' on a certain date – would suffice." *Id.* at 523. The substance of a grievance should "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, [although] for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id*. at 522. If the § 1983 claims against defendants who were not named in the grievance are of a different character from the conduct alleged in the grievance, then those claims have not been exhausted. *Id*.

As the Supreme Court has recognized, the exhaustion requirement is not merely an arbitrary rule: "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."

*Jones*, 549 U.S. at 204. Additionally, the exhaustion process may reduce the number of suits filed by prisoners and also "improve the quality of suits that are filed by producing a useful administrative record." *Id*. The level of specificity required in a grievance is set by the prison's own grievance process. *Jones*, 549 U.S. at 218. The ARP is described in the MDOC Inmate Handbook. According to the Handbook, inmates are directed to keep their original letters of request "as brief as possible." In so doing, however, the inmate is also advised to "present as many facts as possible to answer all of the questions (who, what, when, where, and how) concerning the incident." Inmate Handbook, Chapter VIII, p. 16.

A review of Taylor's ARP file, augmented by his exhibits, shows that, under MDOC policy or § 1983 jurisprudence, he adequately set out his complaint against the officials who charged him with assault and entered the RVR against him and handled his conviction and appeal-- even though the individuals were not specifically named at that time. Nowhere in his grievance, however, does Taylor allege that Officer Hollins, or any other officer, failed to protect him from the inmates who allegedly assaulted him. This omission prevented prison officials from investigating and resolving this claim prior to being sued in this Court; therefore, this claim has not been exhausted against Hollins or Ladner. As many courts have held, an inmate cannot pursue a claim under § 1983 where he failed to adequately describe it through the grievance procedure, even though he set out the basis of another claim. *See, e.g., Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) (dismissing deliberate indifference to medical needs claims against warden and

11

deputy wardens where grievance only alleged excessive force against an officer); *Ward v. Hoffman*, No. 15-2678, 2016 WL 6651870 at *2 (7th Cir. Nov. 10, 2016) (dismissing claims of excessive force where grievance only complained of procedures used by disciplinary committee); *Burns v. Eaton*, 752 F.3d 1136, (8th Cir. 2014) (where grievance only claimed one officer used excessive force by spraying an inmate with pepper spray, court properly dismissed deliberate indifference claim against a different officer who delayed turning on the shower so the prisoner could wash it off); *Hubbard v. Danberg*, 408 F. App'x 553, 555-56 (3rd Cir. 2010) (dismissing claims of discrimination in job placement and mistreatment of disabled prisoners because grievance only alleged discrimination against prison chapter of the NAACP); and *Stone v. Albert*, 257 F. App'x 96, 98 (10th Cir. 2007) (affirming dismissal of claims for excessive force when grievance only alleged inadequate medical care).

Based on a review of the Motion for Summary Judgment and related briefs, Taylor's testimony, the record in this case, and the relevant legal authorities, the Court is convinced that Taylor has failed to exhaust his failure to protect claim against Hollins and Warden Ladner by first proceeding under CMCF's ARP. Although Taylor's failure to exhaust mandates that this claim against Defendants be dismissed, it is not fatal to his remaining claims regarding his conviction for the RVR and his alleged lack of due process in those proceedings, and the punishment he received. *Jones*, 549 U.S. at 924 ("A typical PLRA suit with multiple claims . .. may combine a wide variety of discrete complaints, about interactions with guards, prison conditions, generally applicable rules,

and so on, seeking different relief on each claim. There is no reason failure to exhaust on one necessarily affects any other."). This Court holds, therefore, that Defendants' motion should be granted only in part, and Taylor's claims against them regarding their alleged failure to protect Taylor should be dismissed without prejudice for failure to exhaust his administrative remedies.

IT IS THEREFORE, ORDERED that Defendants' Motion for Summary Judgment for Failure to Exhaust Available Administrative Remedies [37] is **granted in part**, and the claims regarding the alleged failure to protect him are dismissed without prejudice. The case shall otherwise proceed.

IT IS FURTHER ORDERED that all other motions shall be filed in this case on or before **May 15, 2018.**

SO ORDERED, this the 30th day of March 2018.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE